439 So.2d 479 (1983)
CAR KITS, INC.
v.
BOLT-ON PARTS, INC.
No. 82 CA 1058.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*480 David M. Vaughn, John Dale Powers, Baton Rouge, for plaintiff-appellant Car Kits, Inc.
Michael D. Hunt, Baton Rouge, for third party defendant-appellee Dann Deaver.
W. Luther Wilson, Baton Rouge, for defendant-appellee Bolt-On Parts, Inc.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This is a suit by Car Kits, Inc. against Bolt-On Parts, Inc., Dann Deaver, Ventre Corporation, and Tecnik International Corporation. Car Kits, Inc. contends that Bolt-On's delay in delivering merchandise caused the failure of plaintiff's business and resulting damages. Bolt-On filed an answer and reconventional demand against Car Kits and a third party demand against Deaver. After a trial on the merits, judgment was rendered on the main demand in favor of *481 Car Kits and against Bolt-On for $11,281.44; in addition, Bolt-On was awarded $2,500.00 on its reconventional demand against Car Kits. Car Kits' suit against Deaver, Ventre, and Tecnik, and Bolt-On's third party suit against Deaver were dismissed. Car Kits appeals the judgment rendered on the main demand only. Bolt-On answers the appeal, but states in brief that the answer was filed strictly as a matter of protection and assigns no errors.

FACTS
In November or December of 1977, Rodney D. Hendrick, Richard R. Fitzgerald, and Ken J. Stewart, who eventually formed Car Kits, Inc., became interested in the possibility of a commercial market for after-sale add-on kits for specific automobiles, e.g., kits composed of air dams, spoilers and wheel flares for Chevrolet Malibus and El Caminos. As a result of this interest, they contacted Frank Boulton, owner of Bolt-On Parts, Inc., to discuss the possibility of obtaining the components for the kits. Although Bolt-On did not manufacture or stock the parts in question, they advised Car Kits that they could have them manufactured to specification and thus supply the merchandise to Car Kits. Bolt-On then contacted Dann Deaver[1] whose corporations Ventre and Tecnik, would supply the tools to manufacture the parts and the parts themselves. The arrangement was such that Deaver would manufacture the parts and sell them to Bolt-On and then Bolt-On would sell the parts to Car Kits.
During the first few months of 1978, there was considerable communication between Bolt-On and Car Kits regarding the particulars of the proposed project. In a letter dated January 24, 1978, Nedra Ware, Eastern sales manager for Bolt-On, outlined for Car Kits the type of materials to be used and the prices for the parts. The letter also stated that Car Kits would pay $53,000.00 to finance the tooling cost and that Car Kits would be the owner of the tools. In addition, it was agreed that Car Kits would purchase a minimum of 1200 kits from Bolt-On. At a meeting held on February 7, 1978, and attended by Boulton, Fitzgerald and Stewart, Boulton verified the information given in the January 24th letter and in a handwritten addendum placed on the bottom of the last page of the letter stated that the parts would be available within 10 to 13½ weeks.
Nedra Ware, Fitzgerald, Hendrick, Stewart and Deaver had a second meeting in mid-March. At this meeting the Car Kits people requested a change in the design of one of the parts. Deaver told the Car Kits people that as a result of the design change, the order would be delayed approximately a week to a week and a half. Additional delays were encountered when it was decided to switch to a different material and Deaver experienced problems finding a supplier for the new material. Hendrick testified at trial that the delay was due in part to the fact that Bolt-On was falling behind in its payments to Deaver. However, Deaver testified that he had given Hendrick this impression in hopes of putting pressure on Bolt-On to speed up payments, and that although he would have liked more money up front, production was never held up due to late payments by Bolt-On.
In mid-July, Car Kits contacted Bolt-On and requested that their agreement be formalized. A contract was signed on August 4, 1978. It contained the same terms that had been agreed upon earlier by the parties, and in addition, specified a delivery date for the kits and provided for a $1,000.00 per week penalty fee for every week the kits were not delivered on time.
From the testimony at trial, it is evident that by mid-July the relationship between Car Kits and Bolt-On had deteriorated. Car Kits contacted Deaver and began to conduct some of the business with his corporations directly rather than through Bolt-On as had been the original arrangement.
*482 Car Kits first received kits on October 26, 1978. The last shipment of kits was in January of 1979. In all, Car Kits received a total of 193 kits, and of these they have sold approximately 120.
In addition to the contract described above, Bolt-On executed a purchase order with Car Kits for 100 kits. Bolt-On was to retail the kits in their area.

Was the August 1978 Contract a Novation?
Plaintiff first assigns as error the finding of the trial court that the contract signed by Nedra Ware on August 4, 1978, was a novation of an earlier agreement between the parties. LSA-C.C. art. 2185. Novation is a method of extinguishing a debt and is therefore an affirmative defense which must be specially pled in the answer. Independent, Inc. v. Watson, 394 So.2d 710 (La.App. 3rd Cir.1981); LSA-C. C.P. art. 1005. In this instance, the answer filed by defendant Bolt-On does not assert novation as an affirmative defense. Therefore, the ruling of the trial court on this point is in error.
Plaintiff further argues that because there was not a novation of the earlier agreement, defendant Bolt-On is liable for all damages occasioned by the delay and not merely for the penalty fee stipulated in the August contract. In particular, plaintiff prays for all monies spent on expenses necessary to set up the business and for the lost profits.
Although we hold that there was not a novation, we agree with the ruling of the trial court denying damages for business expenses and lost profits. It is true that plaintiff expended monies on rent, employee salaries, and other operating expenses beginning in late May or early June. However, the record reveals that during that same time period plaintiff was utilizing the same location and employees to engage in a separate business involving the production and sale of car louvers.
Regarding damages for lost profits, plaintiff failed to produce any evidence showing that the delays resulted in the loss or cancellation of specific orders and thus the loss of profits. Plaintiff did introduce an undated purchase order for 100 kits signed by Ronald L. Whitney, but this evidence was discounted by the trial judge, apparently because it was not established that the cancellation of the order was due to delays in shipments. A review of the entire record convinces us that the trial judge correctly concluded that the business failed due to lack of interest in the product rather than delays in shipments. Therefore, the ruling of the trial court denying damages for lost profits is affirmed.

Amount of Penalty Due for Delays in Shipments
Plaintiff's second assignment of error involves the amount due for penalty fees as provided for in the August contract. The contract, dated August 4, 1978, states "First Complete Kit due to be shipped August 31st, 1978 to Baton Rouge, Louisiana. Credit of $1,000 per week for each week kits are not delivered after that date." The issue is whether the penalty ceases to run when the first kit was delivered or when the first complete order of 200 kits was delivered. The penalty clause took effect on September 1, 1978, and the first shipment of kits, numbering 18, was delivered on October 19, 1978. Additionally, shipments of various amounts were sent at later dates. Plaintiff admits that in late November, prior to receiving the total 200 kits, he told Bolt-On not to rush with the remainder of the order as he had enough on hand. It is plaintiff's contention that the penalty should be paid for September 1 through the end of November, while defendant maintains that the penalty payments should only run from September 1 through October 19.
The questioned language in the August 4th contract originated in a letter dated July 14, 1978, and written by Richard R. Fitzgerald of Car Kits to Bolt-On. In this letter, Fitzgerald requested a formalization of the agreement which had been reached by the parties and in addition stated "the delivery of the first order will be August 1, *483 1978. We will require a credit of $1,000.00 per week for each week the kits are not delivered after the above date." Bolt-On answered with a letter dated July 27, 1978, in which they wrote "First complete kit due to be shipped August 31st, 1978 to Baton Rouge, Louisiana. Credit of $500.00 per week for each week kits are not delivered after that date." Car Kits resisted this change and subsequently Bolt-On sent a letter dated August 4, 1978 agreeing to the $1,000.00 per week penalty provision.
Ambiguous phrases in contracts are strictly construed against the party who prepared the contract. LSA-C.C. arts. 1957, 1958; Rayford v. Louisiana Sav. Ass'n., 380 So.2d 1232 (La.App. 3rd Cir. 1980), writ denied 384 So.2d 793 (La.1980).
Although the contract is on Bolt-On letterhead, it is clear that the sentence which is at issue was drafted by Car Kits and was only minimally altered by Bolt-On. Because an ambiguous phrase must be strictly construed against the party who prepared the contract, the trial judge was correct in accepting Bolt-On's construction of the contractual phrase and holding that the penalty ceases to run on October 19, 1978, upon delivery of the first shipment of kits.

Additional Damages Requested by Car Kits
Plaintiff argues that the trial court erred in not awarding several additional specific items of damage.
First, Car Kits asserts that Bolt-On had agreed to purchase 100 kits from Car Kits, but only purchased 12 and is therefore liable for $8,078.40 representing the lost profit on the remaining kits. The evidence introduced at trial shows that Bolt-On issued a purchase order for 100 kits which they were to retail in their area. A purchase order is defined as a:
"Document authorizing a seller to deliver goods with payment to be made later. A written authorization calling on a vendor or supplier to furnish goods to the person ordering such. It constitutes an offer which is accepted when the vendor supplies the quantity and quality ordered."[2]
In this instance, Bolt-On has not refused to accept delivery on any kits. This fact was admitted even by Hendrick, a Car Kits owner, who testified that Car Kits had not shipped any additional kits to Bolt-On. Therefore, Car Kits's assertion concerning Bolt-On's liability on this point is without merit.
Second, Car Kits alleges Bolt-On is liable for $4,425.43 which is the amount covering a $23.00 price increase which Deaver charged Car Kits for the 102 kits bought directly from Deaver, and shipping costs for both parts and tools bought directly from Deaver. Car Kits argues that it was forced to do business directly with Deaver as a result of Bolt-On's failure to fulfill the contract. This charge is not substantiated by the record. Plaintiff chose to circumvent its contractual relationship with Bolt-On and deal directly with Mr. Deaver. The fact that the deal struck between Car Kits and Deaver was not as advantageous to Car Kits as was the deal it had with Bolt-On, in no way causes Bolt-On to incur liability for the additional charges. The trial judge was correct in denying damages for this item.
Third, plaintiff alleges it sustained damages amounting to $6,712.65, the amount necessary to correct a paint defect on the seventy remaining kits in inventory. Mr. Hendrick testified that of the 102 kits in the last shipment, essentially all of these were defective due to a paint problem. However, Mr. Fitzgerald testified that he and Mr. Deaver talked frequently concerning the paint problem and that Deaver was trying to help cure the problem. Eventually they concluded that a mold release agent used during the manufacturing process was inhibiting paint adhesion. Fitzgerald testified further that Deaver cured the problem by indicating a particular thinner which should be used prior to painting. Based on *484 these facts the trial judge was correct in denying damages for this item.

Liability of Deaver based on the Existence of a Third Party Beneficiary Contract
Next, plaintiff argues that Deaver is liable to Car Kits under the theory that there exists a third party beneficiary contract in favor of Car Kits. Plaintiff cited State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976) for this proposition.
In Simoni, the Supreme Court found that the state was entitled to assert a cause of action for defective design against an architectural firm despite the fact that it was a state office building corporation (and not the State) who had entered into the building contract with the architectural firm. The court held this position because the state was found to be a third party beneficiary in whose favor the contract between the state office building corporation and the architectural firm had been made.
We find that this principle has no application sub judice since the contract between Bolt-On and Deaver (which may or may not have resulted in a third party beneficiary contract in favor of Car Kits) has not been breached.

Liability of Bolt-On and Deaver based on the Theory of Negligent Misrepresentation
Lastly, plaintiff argues that both Bolt-On and Deaver should be held liable on the theory of negligent misrepresentation. Plaintiff cited Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979) in which the Supreme Court recognized that Civil Code articles 2315 and 2316 afford a broad ambit of protection which is sufficient to encompass a cause of action for negligent misrepresentation.
Plaintiff argues that Bolt-On and Deaver negligently misrepresented to Car Kits that the parts could be delivered within 10 to 13 weeks. After a thorough examination of the record, we find no evidence of negligent misrepresentation and therefore no merit in plaintiff's assignment of error. Both Boulton and Deaver testified that at the time of the February meeting when the initial delivery dates were given, they felt that the dates which had been set were reasonable and could be met. It was not until several weeks later that the delays began, first with a style change, then with a material change, and finally with Deaver's problems finding a reliable source of the new material.
For the above reasons, the judgment of the trial court is affirmed. Costs on appeal to be paid by appellant Car Kits, Inc.
AFFIRMED.
NOTES
[1] Deaver and his corporations, Ventre and Tecnik, will hereafter be referred to collectively as Deaver.
[2] Black's Law Dictionary, 5th Edition, Henry Campbell Black, M.A.