452 So.2d 360 (1984)
DON-BARR FARMS
v.
POINTE COUPEE FARMERS ELEVATOR, INC. and Old River Terminal Co-op.
No. 83 CA 0933.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
*361 Patrick W. Pendley, Freeman & Pendley, Ltd., Plaquemine, for plaintiff-appellee.
James C. Dewey, New Roads, for defendant-appellant Pointe Coupee Farmers Elevator, Inc.
Before COVINGTON, COLE and SAVOIE, JJ.
SAVOIE, Judge.
Defendant, Pointe Coupee Farmers Elevator, Inc. (Pointe Coupee), appeals the trial court judgment against it and in favor of plaintiff, Don-Barr Farms (Don-Barr), in this contract suit.
This litigation was instituted by Don-Barr to enforce two contracts for the sale of soybeans. The first contract, # 1090, dated February 4, 1981, was for the delivery of 5,000 bushels of # 1 yellow soybeans at $8.25½ per bushel. The second contract, # 1093, dated February 24, 1981, was for the delivery of 5,000 bushels of # 1 yellow soybeans at $8.35 per bushel. All of the beans were to be delivered by Don-Barr in January, 1982, to the Old River Terminal. Each of the contracts was signed by Donald Ewing for Don-Barr as seller and by Charles McGehee for Pointe Coupee as buyer.
Approximately 6,400 bushels of beans were delivered to Old River by January 6, 1982. On January 8, 1982, Old River filed for bankruptcy. Since Don-Barr was unable to complete delivery to Old River, the remaining beans were delivered to Pointe Coupee on January 20 and 21, 1982. Pointe Coupee accepted the beans and paid the current market or spot price of $6.25 per bushel.
Don-Barr was not paid for the beans delivered to Old River. On January 8, 1982, this suit was filed to enforce the two contracts. Don-Barr also intervened in the bankruptcy proceeding by filing a vendor's lien on the beans delivered to Old River. Ultimately, Don-Barr received 85% of the amount owed in cash and 15% in a promissory note for the beans delivered to Old River. The check for the 85% was made payable to Don-Barr and Pointe Coupee.
At trial, Don-Barr sought to recover the difference actually received for the soybeans85% cash for 6466.94 bushels, and spot price for 3354.4 bushelsand the contract price.

ACTION OF THE TRIAL COURT
After trial on the merits, the trial court found the two documents to be contracts of sale between Don-Barr and Pointe Coupee. Therefore, Pointe Coupee was obligated to pay the full contract price for the beans. Judgment was rendered in favor of Don-Barr in the amount of $18,011.37, that being the difference between the contract price and the amount Don-Barr actually received. Pointe Coupee appeals that judgment.

ASSIGNMENTS OF ERROR
Pointe Coupee alleges that the trial court erred in:
(1) holding that the transaction between Don-Barr and Pointe Coupee was a sale and not a brokerage agreement; and
(2) computing the amount of money due to Don-Barr, if Pointe Coupee is responsible to Don-Barr.

I.
Pointe Coupee contends that it merely acted as a broker in this transaction and that Don-Barr and Old River were the actual parties to the contract. Pointe Coupee argues that all it did was to telephone Old River to get a price. After allowing for five cents a bushel profit for itself, Pointe Coupee quoted a price to Don-Barr. The contracts were written, based on the price quoted by Old River. The fact that delivery was to be made to Old River is further indication of the intent of the parties, according to Pointe Coupee.
A contract of sale is considered to be perfect between the parties, and the *362 property is of right acquired to the buyer with regard to the seller, as soon as the object and the price are agreed upon although delivery has not been made nor the price paid. C.C. art. 2456. When produce is sold by weight or measure, the sale is not perfect inasmuch as the produce sold is at the risk of the seller until it is weighed or measured; but the buyer may require either delivery of the produce or damages, if there be any, in case of non-execution of the contract. C.C. art. 2458. The seller has two principal obligations, delivery and warranting the thing sold. C.C. art. 2475. Likewise, the buyer has two principal obligations, to pay the sale price and to receive delivery. C.C. art. 2549. If the buyer fails to pay the price, the seller may compel him to do it by offering delivery to him, if delivery has not already been made. C.C. art. 2551.
In this case, the contracts which the parties signed were titled "Contract of Purchase." Each contract specified that 5000 bushels of # 1 yellow soybeans were bought from Don-Barr by Pointe Coupee for a certain price. The soybeans were to be delivered to Old River in January, 1982. Since there was agreement on the object and the price, the sale was made perfect when the beans were delivered. Thus, Don-Barr met all of its obligations as seller, but Pointe Coupee only partially met its obligations as buyer since the contract price was not paid upon delivery.
Pointe Coupee also argues that the action of Don-Barr in intervening in the Old River bankruptcy proceeding is further proof that the contract was between Don-Barr and Old River. The basis of this argument is that Don-Barr could only intervene under the contract and then only if Old River was a party (buyer) to the contract.
Don-Barr's intervention in the bankruptcy proceeding was accomplished by filing a vendor's lien. Through this action, Don-Barr's interest in the soybeans deposited with Old River was made known and was thus preserved from the bankruptcy proceedings. Don-Barr's contention was that the vendee, Pointe Coupee, was still in possession of the soybeans because the contract specified that delivery to Pointe Coupee was to be made at the Old River terminal. Since Don-Barr had no agreement with Old River, possession remained in Pointe Coupee. The intervention was also necessary for the preservation of Don-Barr's rights under L.S.A.-C.C. art. 3227, et seq. Therefore, the existence of a contractual relationship between Don-Barr and Old River was not a prerequisite for the filing of the vendor's lien. Furthermore, we find there was no contract between Don-Barr and Old River.
Pointe Coupee's agent testified that he called Old River to lock in a price to "cover himself." This indicates a second contract was made between Pointe Coupee and Old River, not that Don-Barr's contract was with Old River.
The agent also testified that had Don-Barr failed to deliver the beans under the contract, legal means would have been taken by Pointe Coupee to acquire the beans. Such action is normally taken by a buyer rather than by a broker.
We find no merit in Pointe Coupee's arguments. The contracts were clearly contracts of sale, not brokerage contracts. The contracts were signed by Pointe Coupee's agent as buyer on their printed forms. If this was to have been a brokerage agreement, it would have been very simple to show that intent in the documents. This was not done. This court is bound to give legal effect to a written contract according to the true intent of the parties and this intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. L.S.A.-C.C. art. 1958. Quintana Petroleum Corporation v. Alpha Investments Corporation, 435 So.2d 1092 (La.App. 1st Cir.1983), rehearing denied, Aug. 23, 1983. Any ambiguities are to be construed against the party drafting the document. See Car Kits, Inc. v. Bolt-On Parts, Inc., 439 So.2d 479 (La.App. 1st Cir. 1983). We find no ambiguity. Even if there were any ambiguities, they would *363 have to be construed against the drafter, Pointe Coupee. Thus, the result would be the same.

II.
Pointe Coupee alleges that the trial court erred in computing the amount owed to Don-Barr. Pointe Coupee argues that credit should have been given for handling costs and for the amount of the promissory note representing 15% of the price for beans delivered to Old River.
The amount due under the contracts for 10,000 bushels of soybeans was $83,025.00. At the time of trial, Don-Barr had received a total amount of $65,013.63. This amount included $44,234.98 cash from the bankruptcy proceeding and $20,778.65 from Pointe Coupee as the spot-market price for the beans delivered there. This leaves a difference of $18,011.37.
The evidence introduced at trial shows that Don-Barr delivered 6466.94 bushels of # 1 yellow soybeans to Old River and 3354.4 bushels of # 1 yellow soybeans to Pointe Coupee for a total of 9821.34 bushels. The total price for 5000 bushels at $8.25½ per bushel under contract # 1090 is $41,275.00. The price for the remaining 4821.34 bushels under contract # 1093 at $8.35 per bushel is $40,258.19. The total amount due for soybeans actually delivered is $81,533.19. This leaves a difference of $1491.81 between the soybeans contracted for and the soybeans actually delivered. This difference, $1491.81, should be credited to Pointe Coupee against the contract price of $83,025.00.
Counsel for Don-Barr admitted to the trial court during closing argument that a credit of $408.00 should be allowed to Pointe Coupee for the soybeans delivered there. This figure represents the extra handling charges Pointe Coupee incurred that were normally passed on to the seller. No other evidence was introduced relative to any other expenses which should be deducted for the soybeans delivered to Pointe Coupee or Old River. Therefore, none may be granted.
Pointe Coupee should be allowed a credit in the amount of $1899.81. To this extent the judgment of the trial court is amended. The question of the promissory note is not before this court. Therefore, no credit will be given for it.
For the above and foregoing reasons, the judgment of the trial court is affirmed in part and amended in part. Judgment is hereby rendered in favor of plaintiff, Don-Barr Farms, and against defendant, Pointe Coupee Farmers Elevator, Inc., in the amount of $16,111.56, together with legal interest from the date of judicial demand. Costs of this appeal are to be shared equally by the parties.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.
COVINGTON, J., concurs.