LOTTINGER, Judge.
This is an action ex contractu by C.R. Walker against G.L. Creech, doing business as Truck Services Hauling and Rentals, for the enforcement of a lease entered into by the parties, and for damages which resulted from the alleged breach of the lease by Creech. From a judgment in favor of defendant, plaintiff has appealed.
FACTS
G.L. Creech, doing business as Truck. Services Hauling and Rentals (Creech), was in the trucking business and contracted with shippers for the shipment of freight. Creech had obtained a permit from the Public Service Commission (Commission) to operate as a contract carrier, and owned a number of trucks and trailers which he used in his business.
C.R. Walker (Walker) was also in the trucking business, but was unable to obtain a permit from the Commission. Therefore, his principal business was derived from the leasing of his trucks to enterprises which had obtained the necessary permit. These enterprises would, for a fee, use Walker’s trucks to haul freight for a shipper.
During the period from July 1978 to February 1980 Walker leased a number of trucks to Creech. During this same period a number of lease agreements were utilized. All leases were identical, except for the description of the various trucks which were leased. These leases were in writing and met all the formal requirements of the Commission.
Under these leases, compensation to Walker for the use of his trucks was to be “70% gross revenue.” In accounting for the gross revenue, each week Creech would furnish Walker with a listing of the prior week’s shipping activity involving Walker’s trucks.- These lists contained a listing of each load of freight moved by Walker’s trucks, the shipper’s (customer’s) name, the amount from which Walker was to be paid, and 70% of that amount, which was to be Walker’s compensation. Walker never received any invoices or bookkeeping from Creech and relied on Creech to handle all billing and computations. Creech would pay Walker the amount due under their agreement on a weekly basis.
The dispute which prompted this lawsuit arose over the manner in which Creech calculated the “70% gross revenue” due Walker. Before calculating Walker’s compensation, Creech would deduct a portion of the actual amount received from the customer. This amount was applied by Creech as rental for his trailers, which were pulled by Walker’s trucks. After deducting this amount, Creech would use the remaining figure as gross revenue to compute Walker’s 70% compensation.
When Walker learned that Creech had been deducting this amount for trailer rentals, he filed suit for 70% of this money retained by Creech. In addition, Walker asked for damages which resulted from his borrowing of money to remain in business, which he would not have had to do if Creech would have paid him the proper amount of compensation. Walker alleges that “70% gross revenue” meant 70% of the total amount billed to Creech’s customers, and that any rental due Creech for his trailers was encompassed in the 30% retained by Creech. Creech, on the other hand, contends that the written lease was not intended to be the actual agreement between the parties and was merely used to meet the formalities of the Commission. Creech defended the lawsuit by contending *659 that the lease was not intended to be the operating agreement between the parties, and that it is therefore unenforceable. Creech further contends that the actual operating agreement between the parties was an oral agreement that varied the terms of the written lease.
TRIAL COURT
In his written reasons for judgment, the trial judge found that the lease was a “fraud and a sham” and was merely a formality to side step the Commission’s regulations and rules. The judge further found the existence of an oral agreement but did not reach the issue of the validity and legality of the oral agreement. Rather, the trial judge dismissed Walker’s claim because Walker failed to prove the existence of an enforceable agreement between the parties, since the written lease was not intended to be a contract between the parties. From this judgment, Walker appeals, alleging four assignments of error. However, the crucial issue on which the resolution of this case turns is the validity and enforceability of the written lease on file with the Public Service Commission.
ENFORCEABILITY OF THE WRITTEN LEASE
The Public Service Commission has been given broad authority to regulate and control all motor carriers, including contract carriers. La.R.S. 45:161 et seq. The purpose of this authority is one of public policy which arises from the effect which the operation of these motor carriers on public highways has on the public interest. La. R.S. 45:161. To carry out its function, the Commission has the authority-to adopt and enforce reasonable rules and regulations governing the operation of motor carriers. La. Const. Art. IV, § 21(B); La.R.S. 45:163.
Pursuant to this authority, the Commission has enacted and adopted Louisiana Public Service Commission Order No. 9901 to establish rules and regulations for the leasing of vehicles by licensed carriers and to prohibit the “farming out” of operating rights under the guise of a lease. In addition to providing the minimum requirements which must be incorporated into such a lease, Order No. 9901 provides that each lease must be in writing and filed with the Commission. More importantly, the order provides as follows:
There may be no arrangement or understanding between lessee and lessor other than that fully set forth in lease (sic) agreement on file with the Commission. Louisiana Public Service Commission Order No. 9901, as amended.
This order, as any order issued by the Commission, should be enforced by the courts and should not be overturned absent a clear showing of abuse of power or that the order is arbitrary or capricious. Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1208 (La.1983). Considering the strong public interest in rate regulation, highway safety, and the proper maintenance of liability insurance, we find that Order No. 9901, which regulates these concerns when a lease of a vehicle is entered into by a licensed carrier, is not arbitrary, i capricious or abusive of authority.
Under Order No. 9901 the Commission has determined that it is in the best interest of the public and in furtherance of its regulatory scheme to have no agreement between a motor carrier and the lessor of a vehicle other than that which meets the formal requirements set forth by the Commission and filed with the Commission as required. We find that public policy mandates that there be only one agreement between these parties, that being the agreement on file with the Commission. Otherwise, the entire regulatory scheme of the Commission could be thwarted and avoided by the parties entering into a side agreement which varies from the requirements set forth by the Commission. Therefore, a lease filed with the Commission, as required, is the agreement between the parties, regardless of what the parties say or do to the contrary. There can be no other agreement, regardless of the intent of the parties.
*660 In the instant case, the parties entered into a valid written lease which fulfilled the Commission’s regulations and was filed with the Commission as required. This is the agreement between Walker and Creech and any other agreement is irrelevant and contrary to the Commission’s rules and regulations. Public policy mandates that this agreement be enforced.
INTERPRETATION OF “70% GROSS REVENUE”
Under the terms of the written lease, compensation to Walker was to be “70% gross revenue.” Creech has not contended that “gross revenue” is ambiguous or that this language meant 70% of the revenue derived from the truck’s use only, and not revenues from the use of Creech’s trailer. Rather, Creech has rested his entire case on the invalidity of the written lease as a contract and the existence of a separate oral agreement.
Since, as established above, the written lease is the only agreement between the parties and is to be enforced, we must determine the meaning of “gross revenue.” This term is not defined in the lease, and nowhere is it limited to revenues derived by the truck alone and not the trailers. No provisions of the lease provide that Creech was entitled to deduct an amount for the rental of the trailer before computing Walker’s 70%. We find that “gross revenue” means the total revenue derived from each shipment and is not limited to revenues derived from the truck alone. Especially is this true when considering that Creech is the party who prepared the contract, and any ambiguity in a contract is construed against the party who prepared the contract. Car Kits, Inc. v. Bolt-On Parts, Inc., 439 So.2d 479 (La.App. 1st Cir.1983). Therefore, Walker was entitled to 70% of the gross revenue per haul and not a lesser amount.
DAMAGES
The only remaining issue to be decided is the amount of damages due Walker for the breach of the lease. Walker asks for the difference between the amount he was paid and the amount which was actually owed him under the lease. In addition, Walker asks for damages which resulted from Walker’s having to borrow money to remain in business, which allegedly would not have been required had Creech paid him the correct amount under the lease.
Walker also asks for damages in the form of interest payments on loans which he was allegedly forced to borrow because Creech was underpaying him. Although Walker testified that he was forced to borrow this money because of the underpayment, there is no evidence in the record to establish that payment in full by Creech would have prevented the necessity of Walker’s borrowing of the money. None of Walker’s accounting files or bookkeeping was introduced into evidence. Also, there was no testimony in regards to these loans, other than Walker’s, and his testimony primarily dealt with the terms of the loan and not the basis for his need to borrow money. Thus, we conclude that the interest prayed for is not recoverable, as Walker has failed to adequately establish that these loans were the result of Creech’s underpayment.
Throughout the period that these leases were in effect, Walker relied on Creech to handle all billing and paperwork in regard to Walker’s trucks. Each week Creech would mail a listing known as a “settlement sheet” to Walker. These sheets contained a listing of the previous week’s activities which involved Walker’s trucks. Also included were listings of the invoice numbers for each haul, the purported gross revenue for each haul, and 70% of that figure as compensation for Walker. After suit was filed, Walker’s office was burglarized and all settlement sheets for the period prior to August of 1979, amongst other things, were stolen.
At trial, in an attempt to establish the amount of underpayment by Creech, Walker introduced the settlement sheets for the period from August 1979 to February 1980. In addition, Walker introduced all of the freight bills issued by Creech to customers, *661 including the bills which represented hauls not handled by Walker’s trucks. Based on this, John Sharkey, Walker’s stepson who helped Walker in his business, was able to compare the freight bills, which represented the actual gross revenues, with the amount on the settlement sheets, which Creech represented as gross revenues. This enabled Sharkey to establish the amount of underpayment for the period from August 1979 to February 1980.
However, for the period prior to August 1979, no settlement sheets were available and the only evidence regarding the amount of underpayment was the testimony of Sharkey. Sharkey testified that he was able to compute an average amount of underpayment for the period from August 1979 to February 1980 by comparing the actual gross revenue in the freight bills to the amounts represented by Creech as gross revenue on the settlement sheets. Furthermore, by comparing the amounts charged for hauls made with Walker’s trucks with the total amount of freight bills issued by Creech to a particular customer, Sharkey was able to estimate the percentage of Creech’s business with that customer which was hauled by Walker’s trucks for the same period.
Based on testimony that the ratio between Creech’s business and the use of Walker’s trucks was the same for the period from January 1979 through July 1979 as it was from August 1979 to February 1980, Sharkey was able to apply his average and percentage to estimate the amount of underpayment for the period prior to August 1979.
Walker’s evidence regarding the amount of underpayment prior to August 1979 consists of the invoices issued by Creech to his customers, Sharkey’s testimony, and Shar-key’s computations for one of several companies. The invoices represent the total amount of Creech’s business, and it cannot be determined from the face of the invoices which bills represent hauls made by Walker’s trucks. Also, Sharkey’s testimony was based on estimates and guesses, and was very speculative and unclear. Furthermore, while Creech used Walker’s trucks to haul freight for six customers, the record contains Sharkey's computations regarding only one of these six customers. Other than for the period after August 1979, the record is indeterminate and too speculative to enable us to calculate a proper award.
While we realize that the best evidence to establish the amount of underpayments is missing, we are unable to determine a certain amount of losses due Walker from the evidence in the record. Calculations and computations are an adequate method of establishing damages, but such calculations and computations must be precise, certain and supported by sound reasoning, and not speculative and unclear.
What is needed in this case are accurate computations to establish the amount which was due Walker and the amount which was paid by Creech. Any pertinent documented evidence should also be utilized to establish these amounts. In establishing these amounts, an accurate calculation of the amount of Creech’s business handled by Walker should be established. These computations should be done separately for each of the six customers, as the computations will vary. Additionally, these computations should be documented for the entire period, as well as accurately explained by testimony.
Because of the lack of an adequate explanation of what constitutes the amount retained by Creech, of which Walker should receive 70%, we will remand this case to the trial court for the taking of further evidence, as needed, in order to determine those figures.
Since we have concluded that the written leases on file with the Commission are enforceable and that Walker was entitled to judgment based on the terms of the lease, we need not decide the other issues raised by Walker on appeal.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed and remanded for further proceeding in accordance with the views herein *662 expressed. The costs of this appeal are assessed to appellee.
REVERSED AND REMANDED.