355 So.2d 639 (1978)
George ANDRY
v.
CANADA DRY CORPORATION, DIVISION OF NORTON SIMON, INC., Lastarmco, Inc., and Glass Container Corporation.
No. 8631.
Court of Appeal of Louisiana, Fourth Circuit.
February 24, 1978.
Rehearing Denied March 14, 1978.
Writ Refused May 5, 1978.
*640 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert Henry Sarpy, Jr., New Orleans, for plaintiff-appellant.
Bernard, Micholet & Cassisa, Jerry L. Saporito, Metairie, for Canada Dry Corp. and Lastarmco, Inc., defendants-appellees.
Lemle, Kelleher, Kohlmeyer & Matthews, Paul B. Deal, New Orleans, for Glass Containers Corp., defendant-appellee.
Before GULOTTA, STOULIG and DUPLANTIER, JJ.
DUPLANTIER, Judge.
This case presents proper facts for consideration of Louisiana's position concerning a manufacturer's liability for his manufactured product which, when used as intended by the manufacturer, performs defectively and, as a result, causes injury to the user. Plaintiff, injured while opening a bottle of soda, filed this suit against the bottler of the beverage and the manufacturer of the bottle.
Plaintiff, George Andry, was in the process of mixing a drink (Scotch and soda) for himself at his home, intending to pour the soda portion of the drink from a previously unopened bottle of Canada Dry Club Soda which he had purchased from a beverage home delivery service.[1] The beverage had been mixed and bottled by defendant, Lastarmco. The bottle had been manufactured by defendant, Glass Containers Corporation, and purchased from it by the bottler, Lastarmco. Lastarmco also purchased from another manufacturer (not joined as a defendant) a plain, soft metal cap with no side wall threads. As part of the bottling operation by Lastarmco, this cap was converted to a screw-type cap by a machine, the function of which is to place a plain cap on a filled bottle, force the soft metal side walls to conform with the threads on the bottle, and seal the cap to the bottle.
The bottle and the metal cap are designed in such a manner that the bottle is to be opened and the contents made available to the consumer by the exertion of a twisting force applied to the cap in a counterclockwise direction. The metal cap is intended to be reusable if only a portion of the bottle contents are poured after the bottle is first opened.
As plaintiff was opening the previously unopened bottle of soda in the usual manner, after he had turned the cap counterclockwise slightly, he heard a sharp popping noise and, almost simultaneously, felt a severe pain in his right eye. His wife, who was nearby, assisted plaintiff to a chair, telephoned a physician, and immediately took plaintiff to a hospital where he received medical treatment of an eye injury.
Shortly thereafter, plaintiff's son found the soda bottle cap and the uncapped soda bottle nearby, both in the room where the incident had transpired.
The district court dismissed plaintiff's suit against both defendants, the bottler and the manufacturer of the glass bottle. In his written reasons, the trial court, after finding that the accident occurred as set forth above, concluded that plaintiff had the burden of proving negligence on the part of defendants and that plaintiff had failed to carry that burden. Because we disagree with the trial court's legal conclusion that the manufacturer is not liable absent proof of specific negligence, we reverse with respect to the bottler, Lastarmco, awarding plaintiff damages in the amount set forth hereafter. For the reasons first discussed hereafter, we affirm the dismissal of plaintiff's suit against Glass Containers Corporation, the manufacturer of the bottle.
*641 The manufacturer of the bottle does not occupy the status of a manufacturer of a total product under the circumstances of this case. Rather, the bottle manufacturer is responsible for only one component of the total product. Where there is no proof that a particular component malfunctioned, that component's manufacturer is not liable in the absence of proof of negligence. There is no evidence that the bottle involved in this case, which was the only component manufactured by the defendant, Glass Containers Corporation, malfunctioned in any way. Since there is no proof of negligence on the part of the bottle manufacturer, and no proof of malfunction of the component manufactured by it, the bottle manufacturer, Glass Containers Corporation, is not liable to plaintiff.
The situation however is different as to defendant Lastarmco. Lastarmco manufactured the total product, a bottle of soda water. This completed product malfunctioned when used as intended by the manufacturer, and the malfunction caused bodily injury to plaintiff.
We hold that the manufacturer of a product who places the product on the consumer market is liable for the foreseeable consequences (including bodily injury) of a malfunction of the product if the product reaches the user in substantially the same condition in which it was sold and if the product is used in the manner intended by the manufacturer. To state it another way, we hold that a plaintiff injured as a foreseeable consequence of a product malfunction is entitled to recover if he proves:
(a) that the defendant manufactured the product;[2]
(b) that defendant placed the product on the consumer market;
(c) that the product reached the user in substantially the same condition in which it was when defendant placed it on the consumer market;
(d) that at the time the injury was caused, the product was being used in the manner intended by the manufacturer.
Proof of negligence on the part of the manufacturer is not a prerequisite to recovery.
When plaintiff carries the burden of proving these facts, as he has in this case, it is no defense that defendant has exercised all possible care in the manufacture of the product.[3]
While we express the principles involved in somewhat different language, we view our conclusions as consistent with the oft-quoted Louisiana Supreme Court decision of Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971). In discussing Weber and other opinions of Louisiana appellate courts, the Fifth Circuit Court of Appeals, United States District Courts, and commentators have observed that these Louisiana decisions are in agreement with the concepts embodied in the Restatement of Torts, 2d, § 402. Khoder v. AMF, Inc., 539 F.2d 1078 (5th Cir. 1976); Welch v. Outboard Motor Co., 481 F.2d 252 (5th Cir. 1973); Hastings v. Dis Tran Products, 389 F.Supp. 1352 (W.D.La.1975); and Robertson, Manufacturers' Liability For Defective Products in Louisiana Law, 50 Tul.L.Rev. 50 (1975).
Having found liability on the part of defendant, Lastarmco, we briefly summarize the evidence upon which we base our determination of the amount of damages to which plaintiff is entitled.
Plaintiff's vision had been impaired for a number of years prior to this injury, due to a progressive cataract condition in both eyes. A few days prior to the injury, plaintiff's physician had recommended that both cataracts be removed surgically, preferably *642 within six months, at the longest within 18 months. No date for the surgery had been set.
After being struck in the right eye by the bottle cap, plaintiff was taken immediately to a hospital specializing in eye problems. The emergency examination showed that plaintiff was completely blinded in the right eye from a massive hemorrhage which filled the anterior chamber of the eyeball with blood. Plaintiff was confined to hospital bed rest, with both eyes covered, from March 18 (the day of the accident) to April 3, 1973.
Plaintiff was told of the problems caused by the injury and was quite apprehensive over the possible loss of the sight of his right eye. The forced immobilization for more than two weeks after the accident led to further anxiety and additional stress. Plaintiff's injury was described by his physician as serious and painful. However, medication relieved plaintiff from any acute pain during his hospitalization and afterwards. When the blood cleared from his eye, plaintiff was discharged from the hospital with instructions to rest at home and refrain from physical activity.
The blow from the bottle cap tore the attachments in the upper portion of the lens, which fell back partially into the vitreous fluid of the eye. As a result, prompt cataract surgery became essential, to prevent the lens from completely falling into the vitreous fluid and perhaps being lost. Plaintiff's physician had to use an unorthodox method of removing the cataract by incision from below the lens to prevent loss of the vitreous fluid itself.
Three months after the accident, the cataract from plaintiff's injured right eye was removed surgically. Two weeks later, while he was still in the hospital, the cataract in the left eye was removed. Plaintiff's left eye was not affected by the accident in any way.
About two months after the second surgery, plaintiff was fitted with eye glasses, which corrected his vision to the same extent as if he had not received the injury. At this time he was able to return to his former employment as a stockbroker.
Plaintiff's gross income, derived entirely from commissions from stock purchases and sales by his customers, was $41,773 during 1971, and $31,022 for 1972. In 1973, the year of his injury, he grossed $17,685.
Plaintiff's claim for lost earnings is of course not subject to exact mathematical computation. To a large extent, his earnings depended upon stock market and economic conditions generally, and upon decisions of his clients. This is demonstrated by a decline of over $10,000 (in excess of 25%) in plaintiff's income between 1971 and 1972. Moreover, even without the injury plaintiff would ultimately have had to undergo cataract surgery, with a resultant loss of work time and income. While it is impossible to determine accurately what his income would have been in 1973 had he not been injured, it is certain that he suffered a substantial loss due to his inability to work due to his injury. Considering all factors, we award plaintiff $7,500 to compensate him for loss of income.
Plaintiff's total medical expenses were $5,720. Some portion of the hospital, surgical, and other expenses were for treatment of his uninjured left eye. These expenses and those which would have been involved in any event for routine cataract surgery on the right eye would have been incurred even without the injury. Consequently, we award plaintiff the sum of $3,000 for medical expenses related to the injury.
Plaintiff's injury, though serious and temporarily disabling, did not permanently impair his vision. We award plaintiff general damages for pain, suffering, mental anguish and disability in the amount of $12,500.
For the reasons assigned, the judgment appealed from is reversed insofar as it dismissed plaintiff's suit against Lastarmco, and judgment is hereby rendered in favor of plaintiff, George Andry, and against Lastarmco, Inc., in the amount of $23,000, together with interest from judicial demand until paid and all costs.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The beverage deliverer was not made a defendant.
[2] We do not have here a claim against a seller of a product who is not a manufacturer. Some authorities would treat a manufacturer-seller and a non-manufacturing seller alike. See, for example, Restatement of Torts, 2d, § 402(A). We suppress the temptation to "dictumize" as to the liability of a non-manufacturing seller.
[3] In this respect we take a similar position to that expressed in Restatement of Torts, 2d, § 402(A)(2)(a).