**Lillie Mae LeBOUEF et al., Plaintiffs,**

**v.**

**The GOODYEAR TIRE & RUBBER COMPANY et al., Defendants.**

**TRAVELERS INSURANCE COMPANY, Plaintiff-Appellee,**

**v.**

**FORD MOTOR COMPANY, Defendant-Appellant.**

**No. 78–2553.**

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1980.

Rehearing Denied Sept. 26, 1980.

James E. Diaz, Lafayette, La., for defendant-appellant.

L. H. Olivier, Nicholls Pugh, Jr., Lafayette, La., for plaintiff-appellee.

Before JONES, GEE and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

In the early morning hours of June 6, 1976, Shelby Leleux was killed and his passenger, Floyd Dugas, was seriously injured when the Mercury Cougar driven by Leleux veered off the Louisiana back road on which it had been travelling at over 100 miles per hour and crashed into a cement culvert. The accident occurred when the tread separated from the body of the Cougar's left rear tire. Dugas and Leleux's mother, Lillie Mae Duhon, brought this products liability action against Goodyear Tire & Rubber Company, the manufacturer of the tire, and Ford Motor Company, the maker of the automobile, alleging that the accident was attributable to the products' defective designs and the failure of the defendants to warn of the danger of tread separation at high speeds. The district court, sitting without a jury, agreed and held defendants liable jointly and *in solido*. 451 F.Supp. 253 (W.D.La. 1978). Ford Motor Company appeals,[1] arguing that: (1) it had no duty to warn of or otherwise to guard against the danger of tread separation in situations like that involved here; (2) the district court erred in holding it liable as manufacturer of the tire; and (3) the court should have held Leleux and Dugas to be barred from recovery on the basis of their own conduct in connection with the accident. We affirm.

## FACTS

In January 1976, Shelby Leleux purchased a new, 1976 Mercury Cougar equipped with a 460 cubic-inch, 425 horsepower engine, and with Goodyear HR78–15 Custom Polysteel Radial tires. The tires were standard equipment for the Cougar, despite the fact that they had actually been designed and tested by Goodyear only for a maximum safe operating speed of around 85 miles per hour,[2] while the Cougar was designed with a capability of attaining speeds greater than 100 miles per hour. Despite the disparity in design capabilities (and at least Ford's knowledge of this), the only "warning" associated with the use of the tires at high speeds provided by either party, aside from inflation instructions, was

---

1. Goodyear also initially filed an attack on the judgment, but has subsequently dismissed its appeal. Its insurer, Travelers Insurance Company, has paid to the plaintiffs the entire amount of the judgment and has now been substituted for them as party plaintiff on appeal.

2. In fact, about 10% of the tires of this type that Goodyear had subjected to test speeds of 95 to 100 miles per hour for 30 minute periods did not survive the test.

a statement in the Cougar owner's manual that "[c]ontinuous driving over 90 mph requires using high-speed-capability tires"; the manual did not state whether the tires in question were or were not of high speed caliber. Def. exh. FD–1, p. 70.

After the car had been driven about 1,300 miles, the left rear and right front tires developed a low-speed wobble. Because the tires were separately warranted by Goodyear, Leleux arranged to have these tires replaced by a Goodyear dealer, who moved the car's left front tire to the left rear and installed two new tires on the front.

At about 5:00 a.m. on June 6, 1976, Leleux and Dugas, both of whom had been drinking since 9:00 p.m. on the preceding evening, left Kaplan, Louisiana in Leleux's Cougar for a dance in Riceville, about 15 miles away. The road between these towns is a paved, relatively straight, two-way thoroughfare. One mile outside of Kaplan, Leleux accelerated to a speed of at least 100 to 105 miles per hour and maintained that pace.[3] About six minutes later, the tread separated from the carcass of the left rear tire, which had at that point been driven 4,867 miles. The car veered to the left side of the road and remained on the pavement for 219 feet before fading onto the gravel shoulder. Leleux held the car on the shoulder for 67 feet until it left the roadbed, dropping four feet to a field below. From there the car travelled 225 feet and struck a cement culvert, killing Leleux and seriously injuring Dugas. A blood alcohol test revealed that Leleux's blood contained .18% alcohol, well above established standards for intoxication. The separation of tread from the left rear tire was determined later not to have been caused by road hazards or neglected cuts in the tread.

In the ensuing consolidated wrongful death and personal injury actions, the district court, while finding that the tire had not been defectively constructed, held that the use of this tire on the Cougar in the absence of an adequate warning of the danger of tread separation at the high speeds at which both defendants should reasonably have foreseen their products would be used, rendered the car and the tire unreasonably dangerous. The court further found that, while Leleux's excessive speed was a contributing cause of the accident, his intoxication was not. The court rejected this contributory negligence as a bar to recovery and held, finally, that neither plaintiff had voluntarily assumed the risk of the tragedy that befell them.

## SCOPE OF DUTY

■ Louisiana products liability law, which controls this diversity case, prescribes that the maker of a product may be held liable to one injured due to a defect in that product—whether in design or manufacture, or which results from the lack of adequate warning—that renders the product "unreasonably dangerous to *normal use*." *Chappuis v. Sears, Roebuck & Co.*, 358 So.2d 926, 929 (La. 1978) (emphasis added), *quoting Weber v. Fidelity & Casualty Insurance Co.*, 259 La. 599, 250 So.2d 754, 755 (1971). Ford contends that the circumstances under which product failure occurred in this case constituted a misuse, outside the "normal use" of the Cougar and the tires. Therefore, Ford argues that it had no duty to warn or otherwise to guard against the dangers involved here, and that it, consequently, should not have been held liable for injuries flowing from product failure in that setting.

The only aspect of the accident that raises the question of misuse versus normal use is the excessive speed of the Cougar. There is no evidence that the hazards of speed were exacerbated by poor highway pavement or other road hazards, or that the car or tires had otherwise been subjected to abuse on the night of the accident or before. Moreover, aside from the fact that it may have impaired his judgment in decid-

---

**3.** Though there was some disagreement as to the car's speed, with some testimony indicating that Leleux may have been driving as fast as 140 miles per hour, we do not find this discrepancy so compelling as to render clearly erroneous the trial court's finding of a 100–105 mile per hour speed.

ing to drive at an excessive speed, there is no indication that Leleux's intoxication constituted an independent element of misuse pertinent to this case.

Certainly the operation of the Cougar in excess of 100 miles per hour was not "normal" in the sense of being a routine or intended use. "Normal use," however, is a term of art in the parlance of Louisiana products liability law, delineating the scope of a manufacturer's duty and consequent liability; it encompasses all *reasonably foreseeable* uses of a product. *See, e.g., Rey v. Cuccia*, 298 So.2d 840, 844 n.2, 845 (La. 1974) (duty to warn of "possible hazard" known to manufacturer); *Amco Underwriters of the Audubon Insurance Co. v. American Radiator & Standard Corp.*, 329 So.2d 501, 504 (La.App. 1976) (duty to warn of dangers even from improper use of otherwise non-defective product). *See also, e.g., Jones v. Menard*, 559 F.2d 1282, 1285 n.4 (5th Cir. 1977) (dictum, construing Louisiana law to the effect that "[i]n inadequate warning cases misuse means that the seller had no duty to warn against unforeseeable uses of its products, while in design cases misuse means that the manufacturer had no duty to design a product so as to prevent injuries arising from unforeseeable uses of that product"). The sports car involved here was marketed with an intended and recognized appeal to youthful drivers. The 425 horsepower engine with which Ford had equipped it provided a capability of speeds over 100 miles per hour, and the car's allure, no doubt exploited in its marketing, lay in no small measure in this power and potential speed. It was not simply foreseeable, but was to be readily expected, that the Cougar would, on occasion, be driven in excess of the 85 mile per hour proven maximum safe operating speed of its Goodyear tires. Consequently, Ford cannot, on the

basis of abnormal use, escape its duty either to provide an adequate warning of the specific danger of tread separation at such high speeds or to ameliorate the danger in some other way.[4] *See Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.*, 532 F.2d 501, 503–04 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 111, 51 L.Ed.2d 542 (1977) (duty to warn if product, though not otherwise defective, may not be safely used in certain foreseeable ways).

Ford contends, further, that it had no duty to warn—that is, that the car was not "unreasonably dangerous" without a warning—even if the Cougar was in "normal use" at the time of the accident, since the danger involved was obvious or at least should have been known to Leleux, who dabbled in amateur stock car racing. *American Insurance Co. v. Duo Fast Dixie, Inc.*, 367 So.2d 415, 417 (La.App. 1979) (no duty to warn of obvious danger from improper electrical connection); *Foster v. Marshall*, 341 So.2d 1354, 1362 (La.App.), *writ ref'd*, 343 So.2d 1067 (La. 1977). *Accord, Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.*, 532 F.2d at 504 (no duty to warn sophisticated purchasers of dangers of which they should be aware). *See Chappuis v. Sears, Roebuck & Co.*, 358 So.2d at 930 (duty to warn "when the danger is known to the manufacturer and cannot justifiably be expected to be within the knowledge of users generally"). Though Ford correctly states the Louisiana law on this point, the proof in this case does not support the application of that principle. While the hazards generally of high-speed driving would have been as obvious to Leleux as to any other driver, the particular risk in question here—*vis.*, that the tread would separate from a tire and the danger that this would present—would not have

---

**4.** Ford argues that our decision in *Perez v. Ford Motor Co.*, 497 F.2d 82, 87 (5th Cir. 1974), indicates that "normal use" of a vehicle under Louisiana products law is confined to "routine driving." While *Perez did* decide that this routine activity was, of course, normal use, the court did not there even consider whether other types of driving, such as at excessive rates of speed, might not also be a "normal use."

Ford also suggests to us that an illegal use, such as that involved here, cannot fall within "normal use." It would be blinking reality in this case to hold that Ford could not reasonably have expected purchasers of any automobile, much less one equipped and marketed as was the Cougar, to transgress our nation's speeding laws periodically.

been obvious. Moreover, the evidence concerning Leleux's amateur racing background is insufficient to indicate a sophistication on his part regarding tire capabilities such that he, apart from the average purchaser, should have been aware of the danger of tread separation. *See Fincher v. Surrette*, 365 So.2d 860, 863 (La.App. 1978). Consequently, Ford was not excused from its duty to warn or otherwise to avert the unreasonable risks from tread separation at high speeds presented by its Cougar automobiles, factory equipped with the Goodyear tires in question.

## FORD'S LIABILITY AS MANUFACTURER-ASSEMBLER

Ford next contends that it should not have been held liable as a manufacturer for the failure of the Goodyear tire since it obviously was not the actual manufacturer and did not represent itself to be such, and since the name of the actual maker, Goodyear, was boldly emblazoned on the tire. It relies for its contention upon extrapolations from the holdings in *Penn v. Inferno Manufacturing Corp.*, 199 So.2d 210 (La.App.), *writ ref'd*, 251 La. 27, 202 So.2d 649 (1967), and *Aymond v. Texaco, Inc.*, 554 F.2d 206 (5th Cir. 1977) (applying Louisiana law). In *Penn* the Louisiana court ruled that a company that held a product out as its own, by attaching its label and supplying it for use as a component part in a larger product that it manufactured, was liable to purchasers and users as if it were the manufacturer of that component part, despite the fact that the part had actually been fabricated by another. 199 So.2d at 214–15. Conversely, this court in *Aymond* distinguished *Penn* and held that a defendant could not be held liable as manufacturer of the product of another where it had neither marked or otherwise held the item out as its own, nor incorporated it as a component into one of its own products. 554 F.2d at 211. Ford reasons from these cases that an assembler

is not to be held liable under Louisiana products liability law for the failure of a component part of its product, where that component is not held out as the assembler's own, but rather is plainly labelled as the product of another.

██ Ford's argument misapprehends the import of *Penn* and *Aymond*, as well as the basis upon which its liability is predicated. *Penn* and *Aymond* both involved the question whether one not the actual manufacturer of an item might nonetheless be held responsible for fabrication or design defects of that item. Even if we indulge Ford so far as to accept, arguendo, the premise that an assembler is not liable for manufacturing or design flaws in items plainly labelled as the products of others—even though the assembler selected these as components for use in its final creations[5]—, this does not carry the day for Ford.

The tire in question was not found to be defective either in design of construction independent of its use on the Cougar; nor is Ford's liability focused on the failure of the tire, alone. It was Ford's selection and utilization of these tires without an adequate warning, on an automobile that it knew was capable of speeds well in excess of those for which the tires had been safety tested and that it should have expected would be driven at such speeds on occasion, that created the unreasonable risk of harm. Thus, Ford is liable in this case, not for the miscarriage of another manufacturer, as was the case in *Penn*, but for its own active role in the assembly of the unreasonably dangerous composite product, the Cougar automobile, and for the failure of that assemblage as a whole through one of its components. "A manufacturer is no less a manufacturer because his product is composed in part of units manufacture[d] by another." *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803, 807 (La. 1974); *Radalec, Inc. v. Automatic Firing Corp.*, 228 La. 116,

---

5. The Louisiana Supreme Court has alluded in dictum in *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803, 807 (La. 1974), to the possibility that an assembler might not be held responsible for flaws in a component part procured from a manufacturer on which it, the assembler, was entitled to rely. *But see* Restatement (Second) of Torts § 395, Comment *g* (1965) (assembler's duty to inspect component parts).

81 So.2d 830, 833 n.3 (1955). *Accord, Ford Motor Co. v. Mathis*, 322 F.2d 267, 274 (5th Cir. 1963) (applying Texas law, holding assembler of automobile responsible as manufacturer for all components and totality of automobile).

## DEFENSES

Ford contends, finally, that Leleux's and Dugas' own fault should have barred recovery in this case. In this vein, Ford first contends that Leleux's contributory fault in driving at more than 100 miles per hour should preclude his mother's recovery.

 This court has previously held that contributory negligence is not a defense to a strict products liability claim under Louisiana law. *Rodrigue v. Dixilyn Corp.*, 620 F.2d 537 (5th Cir. 1980); *Khoder v. AMF, Inc.*, 539 F.2d 1078 (5th Cir. 1976). These holdings are bolstered by opinions of the Louisiana appellate courts, holding that recovery is barred by victim fault only in the form of assumption of the risk—that is, voluntary and unreasonable use of a product with full knowledge and appreciation of its defect and the danger involved—as opposed to contributory negligence. *See, e. g., Tri-State Insurance Co. v. Fidelity & Casualty Insurance Co.*, 364 So.2d 657, 661 (La.App.), *writ ref'd*, 365 So.2d 248 (La. 1978) (stating that whether formally characterized as contributory negligence or assumption of risk, victim fault ordinarily will be measured by elements of assumption of risk; denied recovery to one shown to be actually aware of "defect" and danger); *Dixon v. Gutnecht*, 339 So.2d 1285, 1289–90 (La.App. 1976), *writ ref'd*, 342 So.2d 673 (La. 1977).

 Insofar as Ford's liability is predicated upon its failure to supply an adequate warning—which, in many ways, is a horse of a different color in Louisiana products liability law—Ford has not demonstrated fault on the part of Leleux sufficient to bar recovery. The Louisiana Supreme Court in *Chappuis v. Sears, Roebuck & Co.*, 358 So.2d at 930, indicated that a victim would not be allowed recovery in an action for a manufacturer's failure to warn, where he "knew, or should have known of the danger, and chose, nevertheless, to use the dangerous instrument." Although this departs from the traditional formulation of voluntary assumption of the risk by objectifying the element of the victim's knowledge (*"should have known"*),[6] it in no way indicates an intention on the part of the Louisiana Court to expand available defenses to include all forms of contributory negligence. Finally, to reiterate, there is insufficient evidence that Leleux knew or should have been sufficiently aware of tire capabilities to render clearly erroneous the district court's rejection of Leleux's assumption of the risk of tread separation, or to compel a finding that even the objective standard of *Chappuis* had been met.

 Ford also contends that Dugas may not recover because he knowingly and voluntarily assumed the risk of riding with an intoxicated driver. *Prestenbach v. Sentry Insurance Co.*, 340 So.2d 1331, 1334 (La. 1976); *Marcotte v. Travelers Insurance Co.*, 258 La. 989, 249 So.2d 105, 107 (La. 1971). Even if we assume the applicability of this principle to a products liability action, it bars recovery only where the driver's intoxication is a substantial contributing cause of the accident. *Id.*

The district court found that Leleux's intoxication was not a contributing cause of the accident in this case. Ford attacks this finding, arguing (1) that a sober driver would have held the car on the road longer and the tire, which deflated here only when the car dropped from the roadbed to the field, might not have burst causing complete loss of control; and (2) that, insofar as liability is predicated on failure to warn, Leleux would not have heeded a proper warning in his inebriated state even had it been given.

The brief answer to Ford's contentions is that they are predicated simply on conjecture rather than evidence and, therefore, do

---

**6.** *Cf.* Restatement (Second) of Torts §§ 496C, 496D (1965) (delineating traditional requirement of *subjective* appreciation of risk by victim).

not demonstrate the district court's resolution of the question to have been clearly erroneous. As to the first of its arguments, though there was expert testimony that an unintoxicated driver might have been somewhat more successful in holding the car on the highway, there was no indication that the naked carcass of the tire would not also have ruptured simply from additional contact with the pavement. The latter argument, that Leleux would not have heeded an adequate warning, is sheer speculation. One might just as reasonably presume that he would have heeded such a warning that tragic morning or that he might, when he purchased the car, have had it equipped with high-speed capability tires.

Consequently, Ford's arguments having demonstrated no error in the judgment of the district court, that judgment is

AFFIRMED.