521 So.2d 563 (1988)
Audrey C. PITRE
v.
ECKO HOUSEWARES COMPANY, INC., Sears Roebuck, Inc., ABC Insurance Co. and XYZ Insurance Co., Woolin Products, Inc.
No. 87 CA 0093.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*564 David B. Allen, Houma, for plaintiff and appelleeAudrey C. Pitre.
Carl J. Schumacher, New Orleans, Frank Sloan, Covington, for defendants and appellantsEkco Housewares Co., Inc. and Sears Roebuck, Inc.
Roy J. Rodney, Jr., New Orleans, for defendant and appelleeWoolin Products, Inc., and Ins. Co. of North America.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
This is a products liability action. On November 23, 1983, the original plaintiff, Mrs. Audrey C. Pitre, purchased a "Woodwind Collection" basting spoon from a Sears Roebuck store in Houma, Louisiana. On January 5, 1984, she was using the spoon to make a roux when without warning the nylon bowl portion of the spoon exploded causing the roux to splatter about her face and body seriously burning her. She filed suit against Sears Roebuck, Inc., the seller of the spoon; Ekco Housewares Company, Inc., the manufacturer of the spoon; Woolin Products, Inc., the manufacturer of the nylon bowl portion of the spoon; and Insurance Company of North America, Woolin's insurer.[1] Mrs. Pitre alleged *565 that all defendants were liable to her under theories of products liability and negligence.
Sears and Ekco filed a third party demand against Woolin and INA, initially alleging that because the nylon bowl of the spoon manufactured by Woolin was defective, Sears and Ekco were entitled to indemnity from Woolin and INA, either based on the purchase order contract between them or based on LSA-C.C. arts. 2531 and 2545. Sears and Ekco then filed a supplemental third party demand alleging that they had compromised and settled Mrs. Pitre's claim against them; they further alleged that they were subrogated to Mrs. Pitre's claim against Woolin and INA in the amount of $7,500.00.
Prior to the trial, Woolin and INA also settled with Mrs. Pitre. The matter proceeded to trial on the third party demand on July 10, 1986. Sears and Ekco called as witnesses two Ekco employees, Mr. Kenneth Petrine and Dr. Aubrey J. Serewicz, and the plaintiff, Mrs. Pitre. Woolin cross-examined all witnesses.
At the close of Sears and Ekco's case, the court continued the trial, leaving the matter open for Woolin's expert to inspect the spoon. All parties agreed that at the conclusion of the testimony by Woolin's expert, Sears and Ekco would put on testimony regarding attorney's fees and costs. Woolin, without presenting any expert testimony, filed a notice of its intention to rest as well as a post-trial memorandum. Sears and Ekco, without putting on any evidence as to attorney's fees and costs, filed its post-trial memorandum; annexed to the memo was an affidavit dealing with attorney's fees.
The trial court rendered judgment in favor of Woolin Products and INA. The trial court found that Ekco was equally liable with Woolin as a joint tortfeasor; he also denied recovery to Ekco and Sears on the basis of subrogation and indemnification, contractual or legal. From this judgment, Sears and Ekco appeal, urging four assignments of error. Sears and Ekco assign as error 1) the trial court's finding that Ekco was liable for the defective spoon; 2) the trial court's failure to award Ekco any judgment under the subrogation agreement it had with Mrs. Pitre; 3) the trial court's failure to award Ekco attorney's fees and costs based on the purchase order agreement between Ekco and Woolin; and 4) the trial court's failure to award Ekco attorney's fees and costs under LSA-C.C. arts. 2531 and 2545.

EKCO'S LIABILITY
Sears and Ekco first contend that Ekco is not liable for the defective spoon, and that Woolin is solely liable for the defect. The trial court based its finding that both Ekco and Woolin were equally at fault in creating the defective product on the testimony of Ekco's expert, Dr. Aubrey J. Serewicz. The trial judge aptly summarized Dr. Serewicz's testimony in his reasons for judgment as follows:
Dr. Serewicz is the head of the general research and development laboratory at Ecko's Illinois plant; he tested the spoon supplied by the plaintiff after the accident.
When asked what his opinion was concerning the defect in the spoon and how it came about, Dr. Serewicz explained that the `explosion' was caused by a bubble of water trapped in the nylon of the bowl. When the temperature of the roux reached a high enough level, the water vaporized, and the gas burst through the nylon. The witness claimed that the defectthe presence of a water bubble was caused when the bowl of the spoon was molded at too cool a temperature. He stated that the use of the shorter molding cycle by Woolin was a common practice used to make a higher economic gain; in his words, `a common economic movement by all molders.'
Prior to November, 1983, Woolin was Ecko's only outside supplier of nylon bowls. However, Ecko was making *566 some bowls internally. Sometime between that date and the present, Ecko made a management decision to discontinue internal production. Although the only true test for quality of the molden plastic is a destructive test, Dr. Serewicz admitted that as early as 1981, Ecko was aware of the defect in the Woolin product caused by inadequate temperatures in the molding process. Nevertheless, Ecko still continues to use the Woolin component part in its manufacturing process. Additionally, Ecko has failed to place a warning on its spoons to alert users to the hazard.
The trial court then found that neither Mrs. Pitre nor Sears was aware of the defect, and that neither was at fault in causing the accident. As to Ekco and Woolin, the court found them to be equally at fault, relying on the case of LeBouef v. Goodyear Tire & Rubber Co., 623 F.2d 985 (5th Cir.1980). LeBouef was a products liability action against a car manufacturer and a tire manufacturer, stemming from an accident which occurred when the tread separated from the body of the car's left rear tire while the car was travelling at over 100 miles per hour. The court found that the car manufacturer was equally liable with the tire manufacturer because it assembled an unreasonably dangerous composite part and because the assemblage as a whole failed due to one of the components. The trial judge in finding Ekco liable stated:
Ecko's liability is predicated upon its own assemblage of an unreasonably dangerous composite product, which failed as a whole because of the defect in one of its components. In the instant case, the spoon manufacturer had actual knowledge of the propensity for injury inherent in the product of the bowl manufacturer. Yet both manufacturers, for profit-motivated reasons, continued to place the defective product in the stream of commerce without adequate warnings.
Defendant contends that although Ekco was aware that some of Woolin's spoon bowls might be defective, because the only method for determining which were defective was destructive testing, Ekco had no actual knowledge of the defect and thus should not be liable. We disagree. The record supports the trial court's finding that Ekco had actual knowledge of defects. A manufacturer is liable for damage resulting from a condition of his product which makes it unreasonably dangerous to normal use. Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987). Furthermore, "a manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. In the context of the manufacturer's duty to warn of the dangers in the use of a product, the manufacturer is obligated to anticipate the environment in which the product will be used and to give notice of the potential risks arising from foreseeable use in the foreseeable environment." Bloxom, 512 So.2d at 843. (Citations omitted). According to our jurisprudence, a manufacturer includes the assembler of parts supplied by others and/or the seller who vouches for the product by holding it out as his own. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748, 752 (La.1987).
In the case before us, Ekco both assembled the spoon and held it out as its own. Furthermore, Ekco was aware of the fact that some of the spoons could be defective. Yet, it still assembled the spoon without warning of this problem. For these reasons, Sears and Ekco's first assignment of error has no merit.

SUBROGATION AGREEMENT
Sears and Ekco contend that the trial court erred in failing to enforce the subrogation agreement.[2] The pertinent *567 portions of the subrogation agreement are as follows:
NOW THEREFORE, the parties to this contract availing themselves of the provisions of the Louisiana Civil Code relating to Transaction or Compromise agree as follows:
Ekco and Sears pay to Pitre, Seven Thousand Five Hundred and 00/100 ($7,500.00) Dollars, receipt which is hereby acknowledged in full and complete compromise and settlement of any and all claims Pitre has or may have against them, reserving to Pitre her full claim against Wollin and INA and reserving to Ekco and Sears their full claims against Wollin and INA and Pitre partially subrogates to Ekco and Sears her claim against Wollin and INA to the extent of Seven Thousand Five Hundred and 00/100 ($7,500.00) Dollars of her total claim.
The trial judge stated that because he found Ekco and Woolin equally at fault, and thus joint tortfeasors, he would view the subrogation agreement as similar to the release of a joint tortfeasor. The judge then relied on Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3d Cir.1964), as well as LSA-C.C. arts. 1803 and 1804; the case and statutes support the principle that where a plaintiff settles with and releases one of the solidary obligors, the remaining solidary obligor is deprived of his right to enforce contribution against the one who has been released. Thus, liability of the remaining solidary obligor to the plaintiff is reduced in the amount of the portion of the settling solidary obligor. The portion of the settling obligor is the percentage of fault attributable to him. The trial judge went on to say that because Ekco and Woolin were equally at fault, neither is entitled to contribution from the other.[3]
The trial judge continued:
The effect of the Harvey rule on the actions of the parties in the instant case is to deprive Ecko of a cause of action against Woolin. The subrogation purported to transfer to Ecko merely the rights Mrs. Pitre had against Woolin for Ecko's virile share of the damages, since Mrs. Pitre, in the same agreement, reserved to herself her rights against Woolin for the remainder. But the settlement with Ecko by Mrs. Pitre eliminated Mrs. Pitre's rights against Woolin for Ecko's virile share. Thus, the purported subrogation agreement transferred no cause of action to Ecko, because Mrs. Pitre could no longer give what she did not possess.
The trial judge further distinguished this case from Morris v. Kospelich, 206 So.2d 155 (La.App. 4th Cir.1968), affirmed and adopted, 253 La. 413, 218 So.2d 316 (1969), wherein the court held that a joint tortfeasor who had compromised the entire claim for damages had a cause of action for contribution against the non-settling tortfeasor if the settling tortfeasor could prove solidarity, among other things. In the case sub judice, because Mrs. Pitre, the plaintiff, reserved her rights as to the remaining tortfeasor, Woolin, the case is distinguishable from Morris. For these reasons, the court denied any recovery to Ekco and Sears under the subrogation agreement.
Sears and Ekco contend that the trial court erred because Ekco and Woolin are not joint tortfeasors, and therefore, the Harvey case is not applicable. As earlier stated, we agree with the trial court's finding that Ekco and Woolin are equally at fault. Because Ekco and Woolin are both at fault, they are joint tortfeasors who are *568 solidary obligors. LSA-C.C. art. 2324. The trial court was correct in applying Harvey and LSA-C.C. arts. 1803 and 1804 to this case.
It is clear from the trial judge's reasons for judgment that he interpreted the subrogation agreement most favorably to Mrs. Pitre. The other alternative was to interpret the agreement to mean that Mrs. Pitre would return Ekco's $7,500.00 out of any money she might recoup from Woolin. From the record, it is not clear who drafted the release agreement. We assume that Sears and Ekco drafted the release, as settlement documents are usually prepared by the defendant who pays the plaintiff's claim and is subsequently released; we further note there that there is nothing in the record to indicate to the contrary.[4] For this reason, we agree with the trial judge's construction of the release agreement against the drafters, Sears and Ekco, and favorably to Mrs. Pitre. Don-Barr Farms v. Pointe Coupee Farmers Elevator, Inc., 452 So.2d 360 (La.App. 1st Cir.1984). For these reasons, we reject Sears and Ekco's contention that the trial court erred in refusing to award them $7,500.00 under the subrogation agreement.

LEGAL INDEMNIFICATION
Sears and Ekco contend that the trial court erred in not allowing them indemnification from Woolin. Initially, Ekco argues that its fault was only vicarious, based on Woolin's fault, and thus, it is entitled to legal indemnification under LSA-C.C. art. 1804.
In order to recover legal indemnification in tort, the party seeking indemnity must show that it is not at fault, and that its liability results from the fault of others; this imposed liability is known as vicarious, technical, constructive, or derivative. Thompson v. Cane Garden Apartments, 480 So.2d 373 (La.App. 3d Cir.1985). "A party who is actually negligent or actually at fault cannot recover tort indemnity." Thompson, 480 So.2d at 375. (Citation Omitted). In this action, Ekco was actually at fault and thus not entitled to tort indemnification.
Sears and Ekco further seek attorney's fees and costs under LSA-C.C. art. 2531. Assuming that in this type of action,[5] Ekco would be entitled to attorney's fees, we deny them. LSA-C.C. art. 2531 reads in pertinent part as follows:
In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect.
We have not found Ekco to be a seller. As earlier stated, it is a manufacturer, according to the products liability jurisprudence. For these reasons, Ekco is not entitled to attorney's fees under LSA-C.C. art. 2531.
CONTRACTUAL INDEMNIFICATION
Ekco contends that the trial court erred in failing to award it its costs and attorney's fees under a purchase order agreement which it used to purchase spoon bowls from Woolin.[6] The pertinent portion of the purchase order reads as follows:
*569 10. Seller warrants, in addition to all warranties prescribed by law, that all goods furnished under this Purchase Order will be free from defects in material and workmanship, will conform to accepted samples or to Buyer's specifications or to both, and if ordered for a stated purpose will be fit for such purpose. Seller also warrants that to the extent the goods are not manufactured pursuant to detailed specifications furnished by Buyer, they will be free from defects in design. Seller hereby indemnifies and shall save harmless the Buyer of and from any cost, claim, charge and expense or fee, including but not limited to attorney's fees arising out of or in conjunction with the breach of any warranty.
The trial court rejected any recovery under the purchase order on the basis that a reading of the whole document shows provisions for Ekco to have spoon bowls replaced or to cancel the order. The trial judge reasoned:
As the evidence showed, Ecko knew of the defect in Woolin's molded bowls, but Ecko continued to purchase them. Ecko did not exercise its rights under the contract by returning the product or cancelling any order. Instead, for economic purposes, Ecko placed a known defective product in the stream of commerce.
Even if the `warranty' provision in the purchase order could be interpreted as applicable to this action in product liability, the warranty does not extend to Ecko's own deliberate acts which form the basis of Ecko's liability in the premises. See Soverign Insurance Co. v. Texas Pipe Line Co. [488 So.2d 982 (La. 1986) ], supra, and the explanation therein of Polozola v. Garlock, 343 So.2d 1000 (La.1977).
We agree that Ekco is not entitled to recover under the purchase order. In this action, Ekco was equally at fault with Woolin; Ekco was actively using the spoon bowl even after it had discovered prior to 1981 that the bowl could prove to be unreasonably dangerous in normal use, and Ekco failed to warn its customers that the bowl could be unstable at certain temperatures.
If Ekco's liability is based in negligence, in order to be entitled to indemnification under the purchase order contract, the intention to indemnify Ekco against losses resulting to it through its own negligent acts must be clearly expressed in unequivocal terms. Polozola v. Garlock, Inc., 343 So.2d 1000, 1003 (La.1977). If Ekco's liability is based in strict products liability, in order to determine whether the parties intended to indemnify against the indemnitee's strict liability, the court must "interpret the contract on this point in light of everything that, by law, custom, usages or equity is considered as incidental or necessary to its effectuation." Soverign Insurance Company v. Texas Pipeline Co., 488 So.2d 982, 983 (La.1986). Applying these rules to the purchase order in this case, we conclude that the parties did not intend to provide for indemnity against Ekco's negligence or strict products liability. We dismiss Ekco's assignment of error involving recovery under the purchase order.
For the foregoing reasons, the trial court's judgment dismissing Sears and Ekco's action against Woolin is affirmed. Costs to be assessed against Sears and Ekco.
AFFIRMED.
COVINGTON, C.J., concurs in the result.
LeBLANC, J., dissents and assigns reasons.
LeBLANC, Judge, dissenting.
I respectfully dissent from the reasoning used in the opinion to dispose of the issue raised by the conventional subrogation between Mrs. Pitre and Ecko. The opinion construes this agreement, which is ambiguous and susceptible of more than one interpretation, against Ecko based on an assumption that Ecko drafted the agreement. There is no evidence in the record to support this assumption. While it may be true, as noted by the majority opinion, that *570 defendants customarily draft release and settlement agreements, I strongly disagree with the position that it can be assumed that Ecko did so in this instance based on this customary, but not obligatory, practice.
I believe the ambiguity in this agreement can only be resolved by seeking the common intent of the parties. Since the evidence in the record is insufficient to make a determination of the parties' intent, I believe this matter should be remanded to the trial court for further evidence on this issue.
NOTES
[1] The names of Ekco and Woolin were misspelled throughout the record. We have used the correct spelling throughout our opinion, except where quoting from the trial judge's reasons for judgment or as otherwise noted.
[2] The trial judge in his reasons for judgment stated:

Paranthetically, it should be noted that although Sears was not at fault, the claims of Sears and Ecko cannot be separated. The subrogation agreement mentions them as one, presumably because Ecko chose to hold Sears harmless. Consequently, there was no evidence before this Court that Sears actually paid any money to the plaintiff.
Likewise, in brief, the arguments made by Sears and Ecko all deal with Ecko.
[3] Sears and Ekco did not specify as an assignment of error the trial court's denial of contribution. However, Woolin in its brief did argue that Sears and Ekco were not entitled to contribution because they had not filed an action for contribution and they had previously only claimed indemnity. We note that the case of Diggs v. Hood, 772 F.2d 190 (5th Cir.1985) addressed the issue of whether a released tortfeasor had a claim in contribution against the remaining, non-released tortfeasor under Louisiana law. The Fifth Circuit answered in the negative, reasoning that the settling tortfeasor's payment did not discharge any part of the debt due by the other tortfeasor. Because the right to contribution only exists in favor of a party who has paid what someone else owes, the settling tortfeasor does not acquire any contribution rights.
[4] Sears and Ekco did not make the argument that the subrogation agreement could be interpreted in this manner initially. Woolin, in its appellee's brief, pointed out this alternative interpretation. Not until Sears and Ekco filed their reply brief did they contend that the agreement could be interpreted in this manner.
[5] According to the jurisprudence, it is somewhat unclear in which products liability cases a plaintiff may recover attorney's fees. Walker v. Maybelline Co., 477 So.2d 1136, 1140 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1333 (La.1986). We pretermit a resolution of entitlement to attorney's fees and for the purposes of this opinion assume that said fees are recoverable.
[6] Although Woolin at trial and in brief makes the argument that the purchase order is inadmissible because it is not the original or a certified copy of the actual purchase order used to order the spoon bowls, we pretermit discussion of this issue due to our ultimate ruling that Ekco is not entitled to indemnification under the purchase order.