554 So.2d 184 (1989)
Cynthia Adkins BURKE, Plaintiff/Appellee,
v.
SAFEWAY STORES, INC., et al., Defendants/Appellants.
No. 20987-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
*185 Nelson & Achee, Ltd. by James S. Denhollem, Shreveport, for defendants/appellants Diamond-Bathurst, Inc., Chattanooga Glass Co. and Gen. Container Corp.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, James A. Mijalis, Shreveport, for defendants/appellees MSB Mfg. Co., Pepsi Cola Bottling Co., Sabine Valley Bottling Co. and Home Ins. Co.
Cook, Yancey, King & Galloway by Samuel W. Caverlee, Shreveport, for defendant/appellee Safeway Stores, Inc.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for intervenor/appellee Liberty Mut. Ins. Co.
Campbell, Campbell & Johnson by James M. Johnson, Minden, for plaintiff/appellee, Burke.
Before HALL, C.J., and SEXTON and LINDSAY, JJ.
HALL, Chief Judge.
Plaintiff, Cynthia Adkins Burke, brought this products liability action to recover damages which were sustained when a bottle of Canada Dry ginger ale exploded in her hand lacerating her ring and index fingers. Made defendants were:
1. Safeway Stores, Inc., the store which offered the ginger ale for sale;

*186 2. Sabine Valley Bottling Company, MSB, Manufacturing Company, Pepsi Cola Bottling Company and Home Insurance Company, hereinafter referred to collectively as Sabine, the bottler of the Canada Dry ginger ale; and
3. Diamond-Bathurst, Inc., Chattanooga Glass Company and General Container Corporation, hereinafter collectively referred to as Diamond-Bathurst, the bottle manufacturer.
By stipulation it was agreed that a judgment against any defendant listed in group 2 or in group 3 would effectuate liability against all members of that particular group.
Liberty Mutual Insurance Company filed an intervention in the action to recover worker's compensation benefits and medical benefits that it had paid to the plaintiff. Sabine filed an incidental demand against Diamond-Bathurst for contribution or indemnity.
The trial court found that the bottle was defective and attributed Diamond-Bathurst with 90% of the fault and Sabine with 10% of the fault. The plaintiff was found to be free from fault. Safeway was exonerated from strict liability by the finding that the damages were caused by the fault of third parties, Sabine and Diamond-Bathurst. Liberty Mutual was granted relief on its intervention. Judgment was rendered in favor of plaintiff for $139,129. The defendants appealed and plaintiff answered the appeal.
Diamond-Bathurst asserts that the trial court erred in concluding that the bottle was defective because there was no direct evidence to support that conclusion. Further, it contends that even if it is found liable to the plaintiff, the trial court erred in apportioning fault between it and Sabine. Sabine contends that regardless of the percentages of fault attributed to each defendant, it is entitled to full indemnity from Diamond-Bathurst, since Diamond-Bathurst created the risk of harm. Sabine asserts that its responsibility is only passive since its liability rests on strict liability.
All defendants contest the trial court's award to the plaintiff for past and future lost wages. Plaintiff asks that the judgment of the trial court be affirmed in all respects except with regard to its failure to award damages for loss of services.

FACTS
On the day of the accident, September 7, 1984, plaintiff was employed as a legal secretary at the law offices of Stephen R. Burke, A Professional Law Corporation. She was shopping for supplies needed at her office at the Safeway in Minden, while in the course and scope of her employment. One of the items on her list was club soda. In order to reach the club soda, she had to move a bottle of Canada Dry ginger ale. As soon as she lifted the ginger ale from the shelf, it exploded without warning resulting in the laceration of her ring and index fingers of her left hand. She was helped to the front of the store by an employee of Frito-Lay who came to the accident scene upon hearing a noise. The store manager instructed a Safeway employee to transport Mrs. Burke to the hospital. Her wounds were sutured in the emergency room at Humana Hospital. Subsequently, Dr. Clinton G. McAllister, an orthopedic surgeon, performed a scar revision surgery on the index finger. Plaintiff performed her physical therapy and attempted to return to work. Typing caused her finger to swell and she experienced pain. Therefore, she stopped working as a secretary. Dr. McAllister testified that plaintiff had a 35% disability of the index finger and a 7% disability of the hand as a whole. Plaintiff is permanently prohibited from returning to work as a legal secretary or cosmetologist, the vocations in which plaintiff had education, experience and training.

LIABILITY
The focus of the inquiry in a products liability action involving an exploding bottle is whether the product was defective, i.e. unreasonably dangerous to normal use. Robertson v. Gulf South Beverage, Inc., 421 So.2d 877 (La.1982); Weber v. *187 Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971). Appellant, Diamond-Bathurst, asserts that the trial court erred in holding it liable because there was no evidence in the record to support the conclusion that the bottle it manufactured was defective, relying on Andry v. Canada Dry Corporation, Division of Norton Simon, Inc., 355 So.2d 639 (La.App. 4th Cir.1978), writ denied, 357 So.2d 1167. In Andry, the plaintiff was injured when the cap popped from a soft drink bottle and hit him in the eye. The bottle manufacturer was dismissed because it had not manufactured the defective component, the bottle cap. Because the plaintiff could not show any independent negligence on the part of the bottle manufacturer, the suit against it was dismissed.
In this case, it is not the bottle cap which caused the injury but the bottle itself. Unfortunately, the exact problem with this product could not be discovered because employees of Safeway either destroyed or disposed of the broken bottle. The plaintiff was the sole eyewitness to the accident. She stated that as soon as she lifted the ginger ale from the shelf, it exploded without warning. Vendors in the store at the time of the accident stated that they heard an explosion or noise in the bottled drink section. Plaintiff stated unequivocally that she did not strike the bottle with or against another object. The bottle cap remained intact on the bottle top after the explosion. Expert testimony established that the bottle is designed to withstand a minimum of 150 lbs. per square inch of internal pressure. Ginger ale is bottled at approximately 60 lbs. per square inch.
The trial court found and the evidence supports that the bottle was in normal use. Even if the plaintiff had struck the bottle while removing it from the grocery shelf, this would have been normal use of the product. Because this product exploded while it was in normal use, it was defective and the plaintiff has carried her burden of establishing liability.
Diamond-Bathurst argues that there is no evidence showing a defect in the bottle, therefore Sabine's pressurization of the bottle could have caused the explosion. It argues that without pressure the bottle is not unreasonably dangerous. Expert testimony reveals that Sabine's machinery could exert a maximum of 80 lbs. per square inch of pressure. Diamond-Bathurst knew that the bottles it manufactured would be pressurized. The expert testimony offered by Sabine negated a finding that the bottle exploded because of excessive pressurization.
Sabine does not contest that it can be held liable as the manufacturer of the product, a bottle of ginger ale. See, Rutherford v. Coca-Cola Bottling Company of Shreveport, 501 So.2d 1082 (La.App. 2d Cir.1987); Andry v. Canada Dry Corporation, supra. Therefore, the judgment of the trial court finding both the bottle manufacturer and bottler liable is correct.

CONTRIBUTION/INDEMNITY
Both Sabine and Diamond-Bathurst are manufacturers. Diamond-Bathurst manufactured the bottle and Sabine incorporated that bottle into its product and placed its name on the product. Under Louisiana law, a party that incorporates a component not actually manufactured by itself into its own product and then holds the product out as its own is a manufacturer. Rutherford v. Coca-Cola Bottling Company of Shreveport, supra; LeBouef v. Goodyear Tire and Rubber Company, 623 F.2d 985 (5th Cir.1980); Pitre v. Ecko Housewares Co., Inc., 521 So.2d 563 (La. App. 1st Cir.1988). Since Sabine is responsible for defects in the entire product, whatever the source, and Diamond-Bathurst manufactured the specific defective component, both are liable in solido to the plaintiff.
Contribution in proportion to respective fault is the general rule as between joint tortfeasors found liable in solido. LSA-C.C. arts. 1804; 1805.
Sabine concedes that it is liable in solido with Diamond-Bathurst to the plaintiff, but asserts that it, Sabine, is entitled to indemnity from Diamond-Bathurst because Diamond-Bathurst created the risk *188 while it was merely technically at fault. The principle of law on which Sabine relies was first espoused in Louisiana in the case of Appalachian Corporation v. Brooklyn Cooperage Company, 151 La. 41, 91 So. 539 (1922). In that case, an owner of a building was held liable to a person on its premises when an 800 lb. cast iron door fell on the injured party. The owner of the building sought indemnification from a company whose employees had actually created the defective condition with the door. There the court held that where the actual fault of the proximate cause of injury is attributable to one party and another party is only technically or constructively at fault, from failure or omission to perform some legal duty, indemnity may be had against the one primarily responsible for the act which caused the damage.
In Dusenbery v. McMoRan Exploration Co., 458 So.2d 102 (La.1984) an oilfield worker was killed due to a defective condition in an oil well's pressure system. The owner of the well filed an incidental demand against the contractor who had created the defective condition in the well. In allowing the owner's claim for indemnity our Supreme Court stated that when liability is imposed on one party on the basis of strict liability and another party on the basis of negligence or actual fault, the strictly liable defendant may recover indemnity against the party actually at fault. In both Appalachian and Dusenbery the indemnitor was found negligent. However, the Dusenbery court placed emphasis on the fact that the indemnitor "actually caused the unreasonably dangerous condition," "actually created the dangerous condition," "actually created the hazard," and "created the situation which brought about the injury."
This case presents an issue that appears to be res nova in Louisiana. Diamond-Bathurst manufactured a bottle which was defective and placed it in the stream of commerce. There is no evidence in the record showing that Diamond-Bathurst was negligent in its manufacturing process. There was no showing that the process it used to manufacture the bottle was deficient or that it did not adequately test for defective bottles or that the materials used in the process were substandard. However, in Louisiana, negligence on the part of a manufacturer need not be shown. The manufacturer is liable for the foreseeable consequences of a malfunction of a product if the product reaches the user in substantially the same condition in which it was sold and if the product is used in a foreseeable manner. Gonzales v. Louisiana Coca-Cola Bottling Company, 459 So.2d 624 (La.App. 5th Cir.1984). The liability of Diamond-Bathurst in this case as well as the liability of Sabine is strict. Sabine tested certain bottles with destructive testing measures to detect whether the bottles were meeting specifications. It owed the same duty as Diamond-Bathurst to not introduce defective products into the stream of commerce. In this case we do not have a strictly liable party and a negligent party, although it appears that the conduct of Diamond-Bathurst was more blameworthy. The trial court found that Sabine had established safeguards, random testing, and inspection procedures to detect defective bottles, and that its liability "is more of a technical or constructive fault imposed by [law]." Thus, there was no "actual fault" on the part of Sabine. On the other hand, regardless of negligence, Diamond-Bathurst created and actually caused the unreasonably dangerous condition of the bottle.
Our research has revealed no cases in Louisiana directly confronting this issue. Diamond-Bathurst argues that we should rule as in Gonzales v. Louisiana Coca-Cola Bottling Company, supra, that each party is a joint tortfeasor with equal responsibility and deny indemnity. In Gonzales, there was a finding that both the bottle cap manufacturer and the bottler were negligent. The court in that case did not award the bottler indemnity because its actual fault had contributed to the defect.
One case from a foreign jurisdiction, Liberty Mutual Insurance Company v. Williams Machine and Tool Company, 62 Ill.2d 77, 338 N.E.2d 857 (1975), confronts the issue squarely. In that case, the issue to be resolved was indemnification between *189 two manufacturers, the producer of a component part and the producer of a finished product. Both defendants were strictly liable to the injured party. One litigant in that case argued that when examining such an issue the court should consider each manufacturer a joint tortfeasor and deny indemnity unless one's conduct is active and the other's conduct passive in causing the injury. The court reasoned that the major purpose of strict liability is to place the loss on the party which created the risk by initially placing the defective product in the stream of commerce, regardless of whether the party was negligent. That court felt, as do we, that the purpose is best accomplished by allowing that same principle to operate in an indemnity action.
Therefore, we hold that once it is established who created the defect as between manufacturers, the assembling manufacturer is entitled to indemnity from the manufacturer who created the risk unless the assembling manufacturer contributed to the defective condition or was actually at fault in failing to discover the defect. Sabine is entitled to indemnity in this case from Diamond-Bathurst because Sabine did not contribute to nor was it negligent in not discovering the defective condition, and Diamond-Bathurst actually created the defective condition. Rather than apportioning fault between the defendants for the purpose of determining contribution, judgment should be rendered in favor of Sabine for indemnification for any amounts Sabine pays to the plaintiff in satisfaction of the judgment.
In Narcise v. Illinois Central Gulf Railroad, 427 So.2d 1192 (La.1983), cited in Dusenbery, the court noted that the legislative adoption of a comparative fault system which requires the fault of all parties to be quantified, possibly will do away to a large extent with the necessity of distinguishing between contribution and indemnity among solidary tort obligors. The accidents in both Narcise and Dusenbery occurred prior to the advent of comparative fault in Louisiana. Mindful of the Supreme Court's speculative footnote contained in Narcise, we have considered whether the comparative fault laws have modified or abrogated the indemnity principles of Appalachian and Dusenbery. We find nothing indicating a legislative intent to preclude indemnification in the instances where one defendant is not actually at fault but is only technically or constructively at fault, and another defendant is guilty of actual fault or created the unreasonably dangerous condition that caused the harm for which both defendants are solidarily liable. Quantification of fault between such defendants would be entirely fictional.

DAMAGES
Lost Wages.
The trial court awarded Mrs. Burke $38,059 in past lost wages and $7,878 in past lost fringe benefits for a total past economic loss of $45,937. For future economic losses, the trial court awarded $67,191 consisting of $55,668 for loss of future earning capacity and $11,523 for loss of future fringe benefits. The future losses were awarded for losses Mrs. Burke would experience over a five year period in which she would be pursuing a bachelor's degree in English as a full-time student. After this five-year rehabilitation period, it was assumed that the plaintiff could pursue a career as a teacher and suffer no further loss of earning capacity.
The awards for past and future earning capacity were in accord with the estimates of Dr. Bettinger, plaintiff's expert, whose testimony the trial court accepted over that of defendant's expert, Dr. Trapani.
Defendants contend that the trial court erred in calculating the plaintiff's loss of earning capacity. They argue that the trial court should have subtracted the plaintiff's earning capacity after the accident, without regard to a period of rehabilitation, from the plaintiff's earning capacity before the accident. They also assert that plaintiff should have mitigated her damages by either beginning her studies for her degree sooner or accepting employment in a capacity that she would have been capable of performing.
*190 Because damages for the impairment of earning capacity cannot be calculated with certainty, the trial court is accorded great discretion in making such an award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir.1986). An award for impairment of earning capacity is not predicated merely upon the difference in a plaintiff's earnings before and after injuries but instead, on the earning capacity of the plaintiff before and after the injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979); Smith v. Porche Brothers Lumber and Supply, Inc., 491 So.2d 412 (La.App. 1st Cir.1986). These awards thus encompass the loss of plaintiff's earning potential the loss of plaintiff's ability to do that for which she is equipped by nature, training and experience. Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La. App. 2d Cir.1984); Smith v. Porche Brothers Lumber and Supply, supra. Because of the speculative nature of these awards, the trial court must exercise sound judicial discretion in determining these awards and render awards consistent with the record and which do not work an injustice on either party. Morgan v. Willis-Knighton Medical Center, supra.
The evidence in this case wholly supports the trial court's conclusion that the plaintiff is disabled from returning to those vocations in which she has education and experience. She simply does not have the manual dexterity in her left index finger necessary to be a secretary or cosmetologist. Plaintiff's rehabilitation expert testified that without retraining or reeducation the plaintiff would be relegated to performing jobs at or near minimum wage with little or no opportunity for advancement or promotion. To avoid this stagnation, he recommended that the plaintiff pursue a degree in English in order to become a school teacher.
Dr. Bettinger testified that if plaintiff's losses were calculated over her work life expectancy taking what she could expect to earn as a legal secretary and subtracting what she could earn as a minimum wage clerical worker, the loss would be more than double the loss calculated on his more conservative, rehabilitation approach. We find no fault with this approach which will place plaintiff in a position to earn wages at least comparable to those she could have expected to earn in the occupation for which she was trained and was pursuing at the time of the accident, and at the same time will not extend her economic loss past the rehabilitation period.
However, defendants contend that the plaintiff should have either attempted to find some type of employment or begun to pursue her degree before trial as a means of mitigating her damages. We agree.
The effect of the trial court judgment is to award plaintiff lost wages for a period of approximately eight years, three years before trial and five years after trial. The plaintiff could have either obtained a minimum wage job or begun her studies before the date of trial. In fact, she began to pursue her education at one point but dropped out due to her child's illness. Since we agree with the trial court that the pursuit of a degree is appropriate for this plaintiff and during that period the plaintiff will not be able to work, we will allow for her five years of future losses to run from the date of trial as the trial court ruled. But, we will reduce her past economic losses by a sum that she could have earned had she obtained employment in a minimum wage job. Therefore, we will reduce her award for past economic losses of $45,937, which did not take into account her residual earning capacity during that period, by $33,095 to $12,842 to reflect sums that she could have earned in a minimum wage job. The trial court's award for future economic losses of $67,191 will not be disturbed.
Loss of Services.
Plaintiff argues that the trial court erred in refusing to award her $48,559 for loss of services. The trial court ruled that Mrs. Burke failed in her burden of establishing that this accident caused her to hire a maid, which is the basis of Mrs. Burke's claim.
*191 Before this accident Mrs. Burke was only responsible for the care of her two children. After the accident, she married Mr. Burke and incurred the additional responsibility of caring for his children as well. The trial court felt that the additional responsibilities incurred as a result of this marriage was the cause of Mrs. Burke incurring the expense of hiring a maid rather than the accident. Although the nature of the accident was severe in regards to disqualifying Mrs. Burke from the only occupations for which she was trained, it was not so severe as to permanently disable her from performing normal household activities. Her physicians have not found that she is permanently disabled from all activity. The facts of this case do not support Mrs. Burke's assertion that she was forced to hire a maid as a result of this accident. Therefore, the trial judge's ruling in this regard is not clearly erroneous and will not be disturbed on appeal.

DECREE
For the foregoing reasons:
1. The judgment in favor of Cynthia Adkins Burke against the defendants, in solido, is amended to reduce the amount thereof from $139,129 to $106,034, and, as amended is affirmed.
2. The judgment apportioning fault between the defendants and rejecting the incidental demand for indemnity of Sabine Valley Bottling Company, MSB, Manufacturing Company, Pepsi Cola Metropolitan Bottling Company, and Home Insurance Company against Diamond-Bathurst, Inc., Chattanooga Glass Company and General Container Corporation is reversed, and judgment is rendered in favor of the Sabine group of companies against the Diamond-Bathurst group of companies for indemnification for any amount the Sabine group pays to plaintiff in satisfaction of the judgment.
3. In all other respects the judgment is affirmed.
4. Costs of the proceeding, including the costs of the appeal, are assessed to the Diamond-Bathurst group of companies.
AMENDED IN PART, AFFIRMED IN PART, REVERSED IN PART.